533 P.2d 754

**Wendell LITTERAL, Plaintiff-Appellant,**

v.

**The SINGER BUSINESS MACHINES COMPANY, a Division of the Singer Company, Inc., and John W. Tinkham, Defendants-Appellees.**

**No. 10031.**

Supreme Court of New Mexico.

March 28, 1975.

Turpen, Hunt & Booth, Tandy L. Hunt, Albuquerque, for plaintiff-appellant.

Rodey, Dickason, Sloan, Akin & Robb, Richard C. Minzner, Albuquerque, for defendants-appellees.

## OPINION

OMAN, Justice.

Plaintiff brought suit to recover wages or compensation he claimed to be due him pursuant to the provisions of § 59–3–4, N. M.S.A.1953 (2d Repl. Vol. 9, pt. 1, 1974). The trial court found in his favor and awarded him $450.00. He has appealed, claiming he was entitled to judgment for a larger amount. We affirm.

Plaintiff was employed by defendant as a service technician from March 16, 1959, until April 1, 1972, when he was discharged. His fixed wage was $180.00 per week, which was paid to him on a bi-weekly basis. In addition, he received quarterly commissions on maintenance contracts. These commissions varied, but the trial court found that they would have been approximately $150.00 for the first three months of 1972. Upon his discharge, he was paid his fixed weekly wage for work

performed, for the period he was entitled to notice of discharge, and for accrued vacation.

Effective January 1, 1972, defendant discontinued payment of commissions on maintenance contracts. Subsequent to the time of plaintiff's discharge, defendant began payment to its service technicians of an allowance in the amount of $4.25 per week, payable bi-weekly. This was made retroactive to January 1, 1972. However, plaintiff was not paid either this allowance or the commission of $150.00 for the first three months of 1972.

On September 26, 1972, after the filing of this suit in the district court, defendant made a written offer of settlement in the amount of $165.75. This amount was computed on the basis of $4.25 per week from January 1, 1972 to September 30, 1972. This offer was not accepted by plaintiff.

His contention is that since defendant failed to pay him the commissions for the first three months of 1972 within ten days after his discharge, or to give him written notice and make payment to him of the amount defendant conceded to be due by way of commissions, both his fixed wage of $180.00 per week and his commissions of approximately $150.00 every three months continued to be owing to him until the tender by defendant of payment on January 16, 1974, of the judgment entered in his favor. He relies upon §§ 59–3–4 & 59–3–7, N.M.S.A.1953 (2d Repl. Vol. 9, pt. 1, 1974), which provide:

"*59–3–4. Discharged employees.*— Whenever an employer discharges an employee, the unpaid wages or compensation of such employee, where such wages are a fixed and definite amount, and not based on a task, piece, commission basis or other method of calculating such amount, the unpaid wages of such employee upon demand shall become due immediately, and the employer shall pay such wages to the employee within five [5] days of such discharge.

"In all other cases of discharged employees the settlement and payment of wages or compensation shall be made within ten [10] days of such discharge.

"In case of failure to pay wages or compensation due an employee within the time hereinbefore fixed, the wages and compensation of such employee shall continue from the date of discharge until paid at the same rate the said employee received at the time of discharge, and may be recovered in a civil action brought by the employee. Any such action must be commenced within sixty [60] days from the date of discharge; Provided, however, that the employee shall not be entitled to recover any wages or compensation for any period subsequent to the date of discharge unless he shall plead in his complaint and establish that he made demand upon his employer at the place designated for payment and payment was refused."

"*59–3–7. Wage disputes—Unconditional payment of wages conceded to be due.*—In case of dispute over wages, the employer shall give written notice to the employee of the amount of wages which he concedes to be due, and shall pay such amount, without condition, within the times fixed by this act [59–3–1 to 59–3–13]. The acceptance by the employee of any payment so made, shall not constitute a release as to the balance of his claim. The provisions of section 4 [59–3–4] shall not be applicable in cases arising under this section, except as herein provided."

As above stated, the wages, which were in "a fixed and definite amount," were paid to and received by plaintiff upon his discharge. This payment complied fully with the requirements of the first paragraph of § 59–3–4, supra. Plaintiff, however, claims that under the language of the first sentence of the third paragraph of that statute, he was entitled to have his fixed wages continued until he was paid his commissions, and these were not tendered to him until January 16, 1974. The particular language upon which he relies reads: "In case of failure to pay wages *or* compensa-

tion due an employee within the time hereinbefore fixed, the wages *and* compensation of such employee shall continue from the date of discharge until paid at the same rate the said employee received at the time of discharge, * * *." [Emphasis added].

It appears to us that the only logical way of construing this particular language in a situation such as here presented—wherein we had wages or compensation which was due and which was fixed and definite in amount, and also wages or compensation which was due but not fixed and definite in amount—is to consider each class of wages or compensation separately—that is, (1) those fixed and definite in amount, and (2) those not fixed and definite in amount. We are of the opinion that this is precisely what the Legislature had in mind in providing for a different period of time in which wages or compensation in each class becomes payable upon discharge of the employee. This construction is consistent with the use of "time" rather than "times" in the particular sentence upon which plaintiff relies. It is also consistent with the repeated use of "wages" and "compensation" as meaning one and the same thing.

Plaintiff would have us use "wages" as being that which is fixed and definite in amount, and "compensation" as that which is not fixed and definite in amount, and then have us construe the statute as requiring payment of both within the respective times provided in order to terminate the obligation of the employer to pay either.

"Compensation" is not defined in the particular act with which we are here concerned [§§ 59–3–1 to 13, N.M.S.A.1953 (2d Repl. Vol. 9, pt. 1, 1974)], but "wages" are defined as " * * * all amounts at which the labor or service rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, commission basis or other method of calculating such amount."

█ Upon the timely payment of the wages or compensation which was "fixed and definite in amount," the defendant had no further obligation to plaintiff in relation thereto under the Act. The commissions, which were not "fixed and definite in amount," and which were not paid within the ten days as provided in the second paragraph of § 59–3–4, supra, continued to be payable until paid, or until a tender of payment thereof had been made by defendant.

Although the amount of these commissions varied from quarter to quarter, the trial court found that they were "approximately $150.00 for the first quarter of 1972." This finding has not been attacked and was the basis for the judgment awarded in the amount of $450.00.

This leads us to the remaining question raised by plaintiff, and that is for what period of time, or for how many quarters, was plaintiff entitled to these commissions. The trial court held he was entitled to them for three quarters, or from January 1 through September 30, 1972. This holding was obviously predicated upon the following unchallenged finding of fact made by the trial court:

"An offer was made by defendant Singer on September 30, 1972, to pay $165.75 as a full and final settlement of the pending lawsuit. This amount, based on new maintenance contracts for 1971 was calculated as follows:
39 weeks (1–1–72—9–30–72) at $4.-25/week = $165.75."

█ Although, as found by the trial court and as conceded by defendant, this offer did not fully comply with the provisions of § 59–3–7, supra, the trial court concluded, and we believe correctly so, that this " * * * was a valid and sufficient tender and terminated any further obligation of defendant * * * to the Plaintiff, subsequent to September 30, 1972."

As above stated, defendant discontinued payment of commissions on maintenance contracts as of January 1, 1972. Some time after plaintiff's discharge, defendant, in place of the commissions, made pay-

ments to its then service technicians of an allowance amounting to $4.25 per week. This was made retroactive to January 1, 1972. The offer of September 30 was obviously made pursuant to and in accordance with this policy of paying this allowance.

It is true the offer of September 30 was made as a full and final settlement of the dispute and was not in fact paid, but in the meantime this suit had been filed by plaintiff on May 26, 1972. The offer was not acceptable to plaintiff, and he eventually recovered a greater amount by proceeding to judgment.

Under these circumstances, we are unwilling to hold the trial court erred in determining that plaintiff was not entitled to recover commissions after September 30, 1972. The judgment is affirmed.

It is so ordered.

McMANUS, C. J., and STEPHENSON, J., concur.